Arthur BENSON et al., Plaintiffs,

v.

CAROLINA FREIGHT CARRIERS CORPORATION, and International Brotherhood of Teamsters, Local Union No. 30, Defendants.

Civ. A. No. 77–204 H.

United States District Court, W. D. Pennsylvania.

June 28, 1979.

Ronald Berlin, Pittsburgh, Pa., for plaintiffs.

Alan Fluke, Wick, Vuono & LaVelle, Pittsburgh, Pa., for Carolina Freight Carriers Corp.

---

Herman L. Foreman, Rothman, Gordan, Foreman & Groudine, Pittsburgh, Pa., for Intern. Broth. of Teamsters, Local Union No. 30.

## MEMORANDUM OPINION

DIAMOND, District Judge.

Plaintiffs brought this action under 29 U.S.C. § 185 and § 187 claiming that their employer, Carolina Freight Carriers Corporation (Carolina), breached the parties' collective bargaining agreement, and that their union, International Brotherhood of Teamsters, Local Union No. 30 (Local 30), failed to adequately represent their rights and interests under that agreement.

Carolina is an interstate motor carrier and plaintiffs work as shop employees at Carolina's terminal in Greensburg, Pennsylvania. In 1974 Carolina proposed to transfer its terminal in Greensburg to Carlisle, Pennsylvania. The essence of plaintiffs' claim is that while meeting to approve that transfer, a labor-management committee composed of defendants' representatives failed to grant—or even discuss the possibility of granting—shop employees the transfer rights which they were entitled to under their collective bargaining agreement known as the "Mechanic Agreement."

Presently before the court is Carolina's motion to dismiss the complaint for failure to state a claim and Local 30's motion for summary judgment. While defendants assert several independent bases in support of their motions, one basis common to each is the argument that, under the "Mechanic Agreement," the plaintiffs in fact had no rights upon transfer of operations. For the reasons set forth below we agree and will grant both motions on that basis.

The parties are generally in agreement that if the collective bargaining agreement did *not* confer transfer rights on plaintiffs, Carolina cannot be guilty of breaching the "Mechanic Agreement," and Local 30 cannot be guilty of breaching their fiduciary duty to represent plaintiffs. In accordance with a determination made earlier by the labor-management committee on change of operations, defendants assert that the only Carolina employees at the Greensburg terminal entitled to transfer rights were those covered by the "National Master Freight Agreement and Teamsters Joint Council No. 40 Freight Division Over-The-Road Supplemental Agreement" (N.M.F.A.); namely, the dockmen and road drivers. Conversely, the defendants contend that plaintiffs' contract, the "Mechanic Agreement," confers no transfer rights. Plaintiffs respond to that argument by pointing to two separate provisions in the "Mechanic Agreement" which they claim do confer transfer rights upon them. It is because we disagree with plaintiffs' reading of both of those provisions that we are granting the defendants' motions.

Plaintiffs first cite Article I(b) of the "Mechanic Agreement" which provides:

"(b) This Agreement shall be binding upon the parties hereto, their successors, administratives (sic), executors and assigns. In the event part of or an entire operation is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceeding, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. It is understood by this section that the parties hereto shall not use any leasing device to a third party to evade this contract. If the minimum wage, hour and working conditions in the Company sold, leased, transferred, etc., differs from those minimums set forth in this Agreement, the higher of the two shall remain in effect for the men involved.

The employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc. of the operation covered by the Agreement or any part thereof. Such notice shall be in writing with a copy to the union not later than the effective date of sale."

Plaintiffs argue that Article I(b) should be construed to mean that if Carolina's Greensburg terminal is *physically* "transferred" the rights of union members are to be maintained, including the right to continued

employment at the new location. We will not recite the semantical process plaintiffs employ to support that reading of the agreement. Suffice to say that we have examined Article I(b) at length and have concluded that there can be no genuine dispute that the word "transfer" refers to a *legal* transfer of an interest in the terminal from Carolina to another party, not *physical* transfer of the plant by Carolina to another location. In short, we agree with the characterization of Article I(b) contained in Carolina's brief, i. e., that it is nothing more than a typical successors and assigns clause.

Plaintiffs' second alleged source of transfer rights is Article 45 § 6 of the dockmen and road drivers' contract, the N.M.F.A., which plaintiffs' contend is incorporated by reference into their own "Mechanic Agreement." Article 45 § 6 of the N.M.F.A. provides in its relevant part:

> "Present terminals, breaking points, or domiciles shall not be transferred or changed nor shall there be any transfers of equipment between terminals which will adversely affect the employment opportunities of the employees at the terminal from which such transfer of equipment is to be made, without the Employer first having asked for and received approval from the subcommittee on change of operations, the members of which shall be appointed by the Eastern Conference Joint Area Committee at each regular meeting. This shall not apply within a twenty-five (25) mile radius. This Committee shall have the power to extend the three (3) year layoff period contained in the Seniority Clause, in considering any change of operations."

While both Carolina and Local 30 dispute that Article 45 § 6 is in fact incorporated into the "Mechanic Agreement," we need not decide that question, for we believe, as Carolina contends, that even if Article 45 § 6 is applicable to plaintiffs, it does *not* confer any transfer rights on them. Article 45 § 6 merely sets forth the *procedure* an employer must follow before instituting a change of operations and does not even purport to confer any *substantive* rights on those affected by such a change. As Carolina points out, and as the Third Circuit implies in *Price v. International Brotherhood of Teamsters, etc.,* 457 F.2d 605 (3rd Cir. 1972)[1], those substantive rights are set forth in Article 5 § 5(a) and (b) of the N.M.F.A. which deal with the opening and closing of branches and terminals. Thus, we believe that as a matter of law the plaintiffs had no substantive transfer rights in the instant case and that, therefore, their claims against Carolina and Local 30 are not sustainable. An appropriate order will be entered.

### ORDER OF COURT

AND NOW, this 28th day of June, 1979, IT IS HEREBY ORDERED that the motion to dismiss filed by defendant Carolina and the motion for summary judgment filed by defendant Local 30 be, and the same hereby are, granted.

---

1. In *Price* the Circuit reviewed a district court decision concerning the transfer rights of certain employees also covered by the N.M.F.A. whose terminal had been closed. In assessing their rights the Circuit looked directly to Article 5 § 5(b)(2).